IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| ) | No. 03 CR 441 |
| v. ) | |
| ) | Judge Robert W. Gettleman |
| GREGORY SCOTT, ) | |

## MEMORANDUM OPINION AND ORDER

Everyone agrees that defendant Gregory Scott's supervised release deserves to be terminated earlier than the five year period imposed by the sentencing judge, except for the possible conflict between two statutory provisions governing his sentence: 18 U.S.C. § 3583 ("§ 3583") and 21 U.S.C. § 841 ("§ 841"). Absent that conflict, the government, the probation office and, of course, the defendant, all agree that defendant has been fully compliant with the terms of his supervised release and has turned his life around sufficiently to justify early termination at this time.[1] For the reasons discussed below, the court concludes that § 841 does not preclude the court from exercising its discretion under § 3583, and therefore grants defendant's motion for early termination of supervised release.

## FACTS

On September 11, 1995, defendant was sentenced by Judge Mills of the Central District of Illinois to a term of 97 months of imprisonment, followed by five years of supervised release, resulting from his conviction for conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 846 and 841(a)(1). Defendant served his sentence without incident and was released on June 24, 2002, at which time he began serving his five year term of supervised release.

---

[1] In fact, the government laudably suggests that, if the court denies early termination of supervised release, the conditions should be modified to a non-reporting status.

Because defendant relocated to the Chicago area, jurisdiction was transferred to the Northern District of Illinois in April 2003. Defendant has been fully compliant with the terms of his supervised release, has successfully completed a drug aftercare program and satisfied all of his financial obligations, obtained employment in which he has been promoted to a position of trust, and has generally turned his life around to become a productive member of society. As mentioned above, all parties agree that he is now deserving of early termination of supervised release were it not for the legal issue discussed below.

## DISCUSSION

Defendant's motion to terminate supervised release is based on § 3583(e)(1), which allows the court under certain circumstances (which, again, are present in the instant case) to terminate a term of supervised release "at any time after the expiration of one year of supervised release." Section 3583 generally governs inclusion of supervised release after imprisonment, and provides for specific terms of supervised release for various categories of crimes, the factors to be considered by the court, conditions of supervised release, as well as early termination, modification and revocation.

The government's opposition to defendant's motion is based on the following language of § 841(b)(1)(B): "Notwithstanding section 3583 of Title XVIII, any sentence imposed under this subparagraph shall . . . include a term of supervised release of at least 4 years in addition to such term of imprisonment . . . ."[2] According to the government, by this language Congress intended to impose harsher sentences of both imprisonment and supervised release for the drug crimes

---

[2]The government's brief misquotes this language as providing that the "court 'shall . . . impose a term of supervised release of at least [4] years.'" (Emphasis by the government.)

2

specified in § 841, and further intended to eliminate any inconsistent provisions of "the entirety of § 3583" by its use of the term "notwithstanding." Thus, according to the government, "imposing" a term of supervised release "of at least 4 years" requires an offender to serve at least 4 years without eligibility for the early termination allowed by § 3583(e).[3]

Such a reading, however, strains the language and the congressional intent beyond reason. To be sure, § 841 imposes harsher sentences on persons convicted of drug crimes than of other criminal activity, imposing, for example, long mandatory minimum sentences of imprisonment. The imposition of these sentences required by § 841, however, cannot be read to require the full service of the sentences in the face of other statutes allowing relief from such service, such as § 3583(e). Once the sentencing judge has imposed the sentence required by § 841, as Judge Mills did in this case, he has fulfilled the mandate of that statute.

For example, although § 841 requires the imposition of a mandatory minimum of ten years imprisonment for certain drug offenses, 18 U.S.C. § 3624(b) allows a 15% credit for satisfactory behavior while incarcerated. This credit is no less an alteration of the mandatory sentence of imprisonment required by § 841 than is an early termination of supervised release after a period of at least a year under § 3583(e).

But, argues the government, the "[n]otwithstanding section 3583" language added in 2002 to § 841 requires that statute to be read in isolation of the "entirety" of § 3583. The court respectfully disagrees. First, as defendant points out, the 2002 language was added in response to challenges filed by a number of drug offenders who were sentenced to periods of supervised

---

[3]In the instant case these four years end on June 24, 2006, after which the government agrees that defendant is eligible for, and deserving of, termination of supervised release.

release greater than the maximum that would otherwise have been allowed by § 3583(b).[4]

Second, reading § 841(b)(1)(B) in its entirety makes clear the congressional intent to require the imposition of a longer minimum period of supervised release than otherwise allowed in § 3583(b) without interfering with the remainder of the statutory scheme governing supervised release prescribed by the other subsections of that statute including revocation, modification and early termination of supervised release. Thus, immediately following the "notwithstanding" sentence, the statute reads, "Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any persons sentenced under this subparagraph. No person sentenced under this subparagraph shall be eligible for parole during the term of imprisonment imposed therein." When Congress intended to limit any post-incarceration discretion, therefore, it specifically did so. Its failure to include the long-standing traditional discretion to terminate supervised release early under specified circumstances was not mentioned in the 2002 amendment to § 841.

The only conclusion that the court can draw in the context of the legislative history and the purposes to be served by these various statutes, in light of the less-than-clear language at issue in § 841, is that Congress intended to exclude the maximum periods of supervised release otherwise set forth in § 3583(b), leaving untouched the possibility of early termination of supervised release allowed by § 3583(e). To read § 841 in isolation of § 3583 in its entirety would eliminate the possibility of revocation or modification of supervised release just as it

---

[4] See e.g., United States v. Cardenas, 917 F.2d 683 (2nd Cir. 1990); United States v. Esparsen, 930 F.2d 1461 (10th Cir. 1991); United States v. LeMay, 952 F.2d 995 (8th Cir. 1991); and United States v. Kelly, 974 F.2d 22 (5th Cir. 1992).

4

would eliminate the possibility of early termination. Such an untenable result could never have been intended by Congress and will not be so construed by this court.[5]

Having concluded that § 3583 allowed the early termination of defendant's supervised release, the court, somewhat retrospectively, asked the parties to submit supplemental briefs on whether, even if the court were to accept the government's interpretation of § 841, the 2002 amendment could be applied retroactively in this case, in which defendant's sentence was imposed in 1995. Both parties seek support from the Supreme Court's decision in Landgraf v. USI Film Products, 511 U.S. 244 (1994), in which the Court established a two-part inquiry to determine whether a statue is retroactive. "First, the court must discern whether Congress has spoken to whether the statute should have retroactive effect. . . . If the statute is silent regarding whether a specific provision is retroactive, the court next must consider whether retroactive application of the statute 'would impair rights a party possessed when he acted, [would] increase a party's liability for past conduct, or [would] impose new duties with respect to transactions already completed.'" Faiz-Mohammad v. Ashcroft, 395 F.3d 799, 801-802 (7th Cir. 2005) (quoting Landgraf, 511 U.S. at 280).

In the instant case, it is clear that, in enacting the 2002 amendment to § 841, Congress did not express any clear directive regarding retroactive application. It thus becomes necessary to

---

[5]In the only case on point, U.S. v. Spinelle, 41 F.3d 1056 (6th Cir. 1994), the court rejected an identical argument as that raised by the government in the instant case, holding that the two statutes, § 841 and § 3583(e), must both be given effect if possible. The court interpreted those two statutes as being "quite consistent," requiring "two separate chronological phases, the statute mandating a specific sentence of supervised release and the statute authorizing the termination of a prior imposed sentence." Id. at 1060. Thus, although the Spinelle case was decided before the 2002 amendment, the logic of that case clearly supports the notion that the "imposition" of the sentence is both chronologically and conceptually distinct from the post-sentencing alteration of the service of supervised release.

determine whether, in the context of this case, retroactive application of the statute "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." Landgraf, 511 U.S. at 280. The government takes the position that the 2002 amendment to § 841 was merely procedural, comparing it to the amendments to Title VII of the Civil Rights Act that allowed jury trials in employment discrimination cases. 42 U.S.C. § 2982a(a), (c). The Landgraf Court noted that such an amendment was the sort of procedural change that "would ordinarily govern in trials conducted after [the amended statute's] effective date . . . regardless of when the underlying conduct occurred." Id. at 280-81. The court disagrees with the government's position. The imposition of a mandatory minimum sentence simply cannot be viewed as merely procedural. Indeed, the subject 2002 amendment to § 841 addresses the range of punishment for specified drug crimes, not the procedures to be employed in determining the punishment.[6]

Defendant, in his second supplemental brief, takes the position that retroactive application of the 2002 amendment to § 841 would violate "fundamental principles of fair notice and reasonable expectation" because it would destroy defendant's "reasonable expectation that the possibility of early termination would be available to him." Thus, defendant argues, had defendant known that no relief was available to him under § 3583(e) after one year of supervised

---

[6]As such, retrospective application of the 2002 amendment would seem to constitute an ex post facto law in violation of Article I, Clause 9 of the Constitution, because, if it eliminated the relief available under § 3583(e), it would "increase the quantum of punishment." Miller v. Florida, 482 U.S. 423, 434, 107 S.Ct. 2446, 2453 (1987); see also Calder v. Bull, 3 U.S. 386, 390, 1 L. Ed. 648 (1798). The parties, however, appear to have assumed that ex post facto analysis does not apply in the instant case, and the court need not reach this constitutional issue. Three Affiliated Tribes of Fort Berthold Reservation v. Wold Engineering, P.C., 467 U.S. 138, 157, 158 (1984)(collecting cases).

6

release, he might have made different decisions with respect to his defense, such as pleading guilty rather than standing trial.

Defendant's position appears to be well founded. In addition, the reasonable expectations that defendant may have had were also shared by the district court in making its sentencing decision. Prior to the 2002 amendment, Judge Mills could have imposed a term of supervised release of four years or more. His determination to impose a term of five years supervised release was made with the expectation that, under § 3583(e), he or a transferee court would be able to alter the terms of supervised release after a year. If the "notwithstanding" language added in 2002 required defendant to <u>serve</u> at least four years, applying the 2002 amendment to § 841 retroactively would significantly alter the expectations of both defendant and the sentencing court. Under the guidelines established by the Supreme Court in <u>Landgraf</u>, therefore, the 2002 amendment cannot be applied retroactively.

Accordingly, even if the court were to accept the government's argument that the "notwithstanding" language added to § 841 in 2002 required that statute to read in isolation of the entirety of § 3583, the 2002 amendment could not be applied to defendant in the instant case. Under the holding of <u>U.S. v. Spinelle</u> and the conclusions of this court discussed above, therefore, § 3583(e) allows early termination of defendant's supervised release.

## **CONCLUSION**

Because it is uncontested that defendant has met the conditions of § 3583, and the court has concluded that it has the discretion to allow relief under that statute, the court grants defendant's motion to terminate supervised release.

**ENTER:   March 29, 2005**

_____
**Robert W. Gettleman**
**United States District Judge**

7